UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GREGORY WYKOFF,

    Plaintiff,

v.                                                               Case No. 16-12653

WAYNE COUNTY,                                     HON. AVERN COHN
LALETA DOZIER, and
AMINAH AL-SAEEDI,

    Defendants.[1]

_____/

## MEMORANDUM AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Doc. 32)

### I.    INTRODUCTION

This is a 42 U.S.C. § 1983 case. Plaintiff Gregory Wykoff (Wykoff) is suing defendants Wayne County, Nurse Laleta Dozier (Dozier), and Nurse Practitioner Aminah Al-Saeedi (Al-Saeedi) for violating his Fourth, Eighth, and Fourteenth Amendment rights by failing to administer sufficient insulin while he was in the custody of the Wayne County jail.

Wykoff's amended complaint is in four counts:

- Count I: Violation of the Fourth and Fourteenth Amendments;

- Count II: Violation of the Eighth Amendment;

---

[1] Plaintiff conceded at oral argument that the other named defendants (Wayne County Sheriff Department, Wyandotte Police Department, Benny Napoleon, and Brenda Williams) did not violate his constitutional rights.

- Count III: False/Wrongful Arrest and False Imprisonment;
- Count IV: Willful and Wanton Misconduct, and Deliberate Indifference/Gross Negligence.

(Doc. 10). The parties stipulated the dismissal of the City of Wyandotte and the individual Wyandotte police officers, (Doc. 33); Wykoff admits that this rendered Count III moot. Wykoff seeks compensatory damages, punitive damages, and attorney's fees.

The remaining defendants have moved for summary judgment, (Doc. 32), to which Wykoff has responded, (Doc. 35), and defendants have replied. (Doc. 37). For the reasons that follow, defendants' motion is GRANTED.

## II. BACKGROUND

### A.

Wykoff was diagnosed with Type I Diabetes in 2001. At relevant times, his treatment consisted of taking 10 units of short-acting insulin three times a day with meals and 45 units of long-acting insulin once a day in the evening.

Diabetics take insulin in order to reduce their blood glucose level. A glucose level that is too high or too low can cause serious medical problems. (Al-Saeedi Dep. 11-13).

### B.

The relevant facts from the following narrative are attached in chronological form as an appendix.

Around 7:15 p.m. on March 20, 2015, Wykoff was booked into the Wayne County jail in Hamtramck, Michigan, to serve a 13-day sentence for probation violation. He told booking staff that he was a diabetic and had not had insulin "for almost a day-and-a-

half, two days." (Wykoff Dep. 29). A staff member responded that he would have to tell the nurse. (Id.).

Around 9:35 p.m., non-party medical assistant LaShawn Robinson[2] (Robinson) performed a routine medical intake screening. Wykoff told Robinson he had a history of diabetes, hypertension, neuropathy, heart attack, and pain, which she noted on his intake form. (Doc. 32-7). Wykoff did not complain about diabetes-related symptoms at this time. He said he told a nurse (presumably Robinson) how much insulin he usually took. (Wykoff Dep. 29). *See supra* § II.A.

Wykoff's glucose level was checked by an unknown medical staff member at 11:45 p.m. (Doc. 32-9). The reading was 336, which Dozier said is high but not surprising for a diabetic. (Dozier Dep. 67). Wykoff said he told a nurse (presumably the one who checked his glucose on this occasion; the deposition does not specify) that he had been without insulin. (Wykoff Dep. 29). The medical chart indicates that no insulin was administered at this time and the word "initial" appears next to that indication. (Doc. 32-9).

Regarding the lack of insulin administration after Wykoff's initial glucose check, Al-Saeedi and Dozier said that the medical staff knows that inmates eat at registration and that eating causes glucose to rise. No insulin is immediately administered to a new diabetic inmate because the staff want to see how far the glucose level will drop on its own. Glucose will plummet if too much insulin is administered too soon, which can lead

---

[2] The parties call this nurse "LaShawn Johnson" but the medical records indicate that her user name is "lrobinso," (Doc. 32-7), and Dozier identifies her as "LaShone Robinson." (Dozier Dep. 8). Either way, no nurse with the last name Robinson or Johnson is named as a defendant.

3

to serious medical complications. (Dozier Dep. 62-63; Al-Saeedi Dep. 9, 13, 41-43). In his deposition, Wykoff acknowledged that receiving too much insulin is dangerous. (Wykoff Dep. 96).

Around 1:30 a.m. on March 21, 2015, Wykoff saw Dozier for a psychiatric evaluation. Dozier said that inmates with medical issues are "flagged" for follow-up at intake, and that Wykoff was most likely flagged because he was taking Xanax, a psychiatric medication. At the evaluation, Dozier ordered a standard sliding scale for insulin administration. The sliding scale used at the Wayne County jail is one that is commonly used in the medical profession. (Dozier Dep. 9-13). Al-Saeedi testified that a nurse has authority to put an inmate on the sliding scale unless the glucose level is over 400, in which case the nurse must contact the on-call doctor or nurse practitioner. Also, the nurse must eventually confirm the sliding scale order with the on-call doctor or nurse practitioner, (Al-Saeedi Dep. 8, 39), which Dozier later did. (Doc. 32-11). Dozier said that the sliding scale can be adjusted with permission from a doctor or nurse practitioner. (Dozier Dep. 17).

Dozier did not administer any insulin to Wykoff when she ordered the sliding scale. Regarding the decision to wait, Dozier said:

> You don't want to give them a lot of insulin in the middle of the night where they're not going to have any access to food and you don't know how they respond to it. So it's better to keep them a little elevated and get them back on a schedule where you can monitor them; especially in the course of the day. I don't want to do too much in the middle of the night.

(Dozier Dep. 62). Dozier also said that if Wykoff had complained of diabetes-related symptoms at the time of the psychiatric evaluation, she would have noted it on the evaluation form (Dozier Dep. 66). No such note appears on the form (Doc. 35-5).

4

Around 4:00 a.m., when all diabetics in the jail typically have their glucose levels checked, nurse Brenda Williams (Williams) measured Wykoff's glucose. It was now 275, which meant that it had fallen without the administration of any insulin. Williams then administered four units of insulin per the sliding scale order.[3] (Doc. 32-11).

Before 7:10 a.m., Dozier contacted Al-Saeedi on the phone regarding Wykoff. Al-Saeedi approved the sliding scale order for short-acting insulin and also ordered 20 units of long-acting insulin to be taken at dinner time. (Doc. 32-11; Dozier Dep. 50).

At some point, Wykoff started to feel sick while in his cell. He initially told no one that he felt sick, but later he told a pod guard. The guard told him he had to wait. His symptoms got worse and he started to vomit; he told a guard that he needed medical attention. The guard asked Wykoff why he waited so long to say something. The guard then sent Wykoff to the jail medical clinic. (Wykoff Dep. 36).

At the clinic, non-party nurse Mildred Neal (Neal) examined Wykoff around 2:45 p.m. Jail records indicate she observed that Wykoff was vomiting blood, sweating heavily, and experiencing weakness and an elevated heart rate. She also checked his glucose, which she noted at 318, and observed large urine ketones. These symptoms are consistent with diabetic ketoacidosis (DKA), a serious condition that requires hospitalization. Neal phoned Al-Saeedi, who directed that Wykoff be taken to Detroit Receiving Hospital. He was transported to the hospital around 3:38 p.m.

**C.**

---

[3] Wykoff argues that his deposition testimony supports that he was given insulin before his glucose was checked; he is incorrect. Wykoff's deposition testimony is confusing at times because he refers to multiple incidents at the same time, but he clearly states that "when I went in the first time, they – they checked my sugar. It was two something and <u>then</u> they gave me the four units and they sent me back to my pod." (Wykoff Dep. at 37:2-5) (emphasis added).

At Detroit Receiving Hospital, Wykoff was diagnosed with and treated for DKA. After being released from the hospital on March 24, 2015, Wykoff did not return to the jail. He was placed on a tether for the remainder of his sentence. On July 15, 2016, Wykoff filed the present lawsuit.

### III. LEGAL STANDARD

Summary judgment will be granted if the moving party demonstrates that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is no genuine issue of material fact when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The Court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." In re Dollar Corp., 25 F.3d 1320, 1323 (6th Cir. 1994) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)). In doing so, the Court "must view the evidence in the light most favorable to the non-moving party." Emp'rs Ins. of Wausau v. Petrol. Specialties, Inc., 69 F.3d 98, 101-02 (6th Cir. 1995).

### IV. DISCUSSION

#### A. Wayne County

Since no constitutional violation occurred, as discussed below, Wayne County is not liable under § 1983. Stiles ex rel. D.S. v. Grainger Cty., Tenn., 819 F.3d 834, 856 (6th Cir. 2016). Even if it was, Wykoff has not proffered evidence to support that a Wayne County policy was the "moving force of the constitutional violation." Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 694 (1978). Thus, the following

6

discussion relates only to Al-Saeedi and Dozier, the individual defendants who had direct contact with Wykoff.

## B. Count I – Fourth and Fourteenth Amendments

All claims in Count I fail. Wykoff's amended complaint does not contain allegations regarding the Fourth Amendment, and Wykoff concedes that he is not entitled to relief under the Equal Protection Clause of the Fourteenth Amendment.

Defendants are also correct to argue that Wykoff's claims do not fall within the scope of the Due Process Clause of the Fourteenth Amendment. The Sixth Circuit has repeatedly held that claims of deliberate indifference to a prisoner's medical needs are to be analyzed under the framework of the Eighth Amendment, not under the substantive due process framework of the Fourteenth Amendment. Burgess v. Fischer, 735 F.3d 462, 476 (6th Cir. 2013) ("The deliberate indifference to serious medical needs of prisoners . . . constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. The Fourteenth Amendment's Due Process Clause governs such claims presented by pretrial detainees.") (citing Estelle v. Gamble, 429 U.S. 97, 104–05 (1976)). See also Terrance v. Northville Reg'l Psychiatric Hosp., 286 F.3d 834, 848 (6th Cir. 2002) ("The involuntarily committed have greater rights regarding confinement under the Fourteenth Amendment than criminals are due under the Eighth Amendment."); Baynes v. Cleland, 799 F.3d 600, 618 (6th Cir. 2015); Parrish v. Johnson, 800 F.2d 600, 604 n.5 (6th Cir. 1986); O'Brien v. Michigan Dep't of Corr., 592 F. App'x 338, 344 (6th Cir. 2014) (citing Dodson v. Wilkinson, 304 F. App'x 434, 438 (6th Cir. 2008)); Smith v. Michigan, 256 F. Supp. 2d 704, 707 (E.D. Mich. 2003).

These specific holdings justify rejection of Wykoff's reliance on Supreme Court dicta that "incarceration" in general can trigger the protections of the Fourteenth Amendment. See DeShaney v. Winnebago Cty. Dep't of Soc. Servs., 489 U.S. 189, 200-01 (1989).

### C. Count II – Eighth Amendment

Defendants argue that they are entitled to qualified immunity for Wykoff's Eighth Amendment claims. Qualified immunity protects government employees from suit "if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Richmond v. Huq, 872 F.3d 355, 372–73 (6th Cir. 2017) (quoting Pearson v. Callahan, 555 U.S. 223, 231 (2009)) (internal quotation marks omitted). "The qualified immunity analysis has two steps: '(1) whether, considering the allegations in a light most favorable to the party injured, a constitutional right has been violated, and (2) whether that right was clearly established.'" Id. at 373 (quoting Estate of Carter v. City of Detroit, 408 F.3d 305, 310–11 (6th Cir. 2005)). The steps may be considered in either order. Gavitt v. Born, 835 F.3d 623, 640 (6th Cir. 2016) (quoting Brown v. Lewis, 779 F.3d 401, 412 (6th Cir. 2015)).

The Court first considers whether the Eighth Amendment was violated. This occurs when prison employees show "deliberate indifference to serious medical needs of prisoners." Darrah v. Krisher, 865 F.3d 361, 367 (6th Cir. 2017) (quoting Estelle, 429 U.S. at 104). The test has an objective component which "requires that the deprivation alleged be of a sufficiently serious need" Id. (citing Farmer v. Brennan, 511 U.S. 825, 834). A diabetic's need for insulin is "sufficiently serious." Garretson v. City of Madison Heights, 407 F.3d 789, 797 (6th Cir. 2005).

Deliberate indifference also has a subjective component which requires a plaintiff to show "that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." Darrah, 865 F.3d at 368 (quoting Comstock v. McCrary, 273 F.3d 693, 703 (6th Cir. 2001)). Deliberate indifference involves "a showing of more than mere negligence, but something less than specific intent to harm or knowledge that harm will result." Burgess, 735 F.3d at 476.

Further, "[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." Darrah, 865 F.3d at 372 (quoting Westlake v. Lucas, 537 F.2d 857, 860 n.5 (6th Cir. 1976)). "However, a decision to provide an 'easier and less efficacious treatment' may suffice to establish deliberate indifference," id. (quoting Warren v. Prison Health Servs., Inc., 576 Fed. Appx. 545, 552 (6th Cir. 2014)), as may medical treatment that is "so woefully inadequate as to amount to no treatment at all." Alspaugh v. McConnell, 643 F.3d 162, 169 (6th Cir. 2011) (quoting Westlake, 537 F.2d at 860 n.5). See also Burgess, 735 F.3d at 476.

The Court considers the actions of each defendant in turn, as "it is well-settled that qualified immunity must be assessed in the context of each individual's specific conduct." Stoudemire v. Michigan Dep't of Corr., 705 F.3d 560, 570 (6th Cir. 2013) (quoting Reilly v. Vadlamudi, 680 F.3d 617, 624 (6th Cir. 2012)). See also Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable

9

to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

### i. Nurse Laleta Dozier

Wykoff claims that Nurse Dozier erred in three respects. First, she failed to adjust the standard insulin sliding scale upward based on Wykoff's report that he usually took 10 units at meal times. Second, she did not tell Al-Saeedi that Wykoff told her his normal dose was 10 units, and she did not advocate for a higher dose. Third, she did not administer any insulin to Wykoff when she first evaluated him at 1:30 a.m.

Dozier's actions do not amount to deliberate indifference. Dozier said that the on-call nurse practitioner or doctor makes the decision regarding whether to adjust the standard sliding scale, so Dozier could not be expected to adjust the scale on her own. Further, Wykoff's testimony does not make it clear that Dozier was one of the nurses he told about his normal 10 unit doses.[4] Even if she was, Al-Saeedi and Dozier both said that medical staff have to perform medical evaluations independent of inmates' own reports of their medical history. Al-Saeedi also said that medical staff take into account that people need less insulin (sometimes as little as half their normal dose) while they are incarcerated because they typically eat less in jail than they do at home, (Al-Saeedi Dep. 21-22), and that giving too much insulin can be injurious to an inmate's health. (Id. at 9). Wykoff has proffered no evidence that Dozier made the decision to implement a standard medical protocol knowing that it would put Wykoff at risk. It is therefore the kind of medical judgment that the Court will not question. See Darrah, 865 F.3d at 372.

---

[4] Wykoff said he told the first medical staff member he saw about his normal insulin dosage. (Wykoff Dep. 29). According to the medical records, that would be Robinson, not Dozier. (Doc. 32-7).

Finally, as noted earlier, Al-Saeedi and Dozier both testified that medical staff typically wait to administer insulin until they see where an inmate's glucose levels off. Far from being a sign of indifference, this practice is followed in order to reduce the risk that an inmate would be harmed by a low glucose level. Again, Wykoff has not provided any evidence that Dozier followed the practice out of indifference. Dozier therefore cannot be held liable for not administering insulin to Wykoff when she saw him at 1:30 a.m.

### ii. Nurse Practitioner Aminah Al-Saeedi

Al-Saeedi never saw or examined Wykoff. Over the phone, she approved the sliding scale order that Dozier had entered, and she also added a dose of long-acting insulin to Wykoff's regimen. Later, upon learning that Wykoff was exhibiting symptoms of DKA, Al-Saeedi ordered that he be taken to the hospital. Wykoff complains that Al-Saeedi "apparently made no effort to question Dozier about Wykoff and the details of his medical history." The fact that Al-Saeedi "merely learned the glucose level of Wykoff and apparently did not inquire any further," Wykoff argues, shows deliberate indifference.

Wykoff's attempt to create a duty to inquire about Wykoff's normal dosage is fruitless. First, a duty to inquire falls within the realm of negligence, whereas a finding of deliberate indifference requires actual knowledge. Second, even if Al-Saeedi knew that Wykoff normally took 10 units of insulin at meals, she would be justified in approving the sliding scale order for the same reasons that Dozier was justified in ordering it, as described above. Al-Saeedi also ordered additional insulin, which further evidences a lack of indifference to Wykoff's needs.

### iii. Conclusion

In sum, there is no evidence that Dozier or Al-Saeedi provided medical care to Wykoff that was "easier" than the care he would have preferred, Darrah, 865 F.3d at 372, or that was so insufficient as to be the equivalent of "no treatment at all." Alspaugh, 643 F.3d at 169. See Aaron v. Finkbinder, 793 F. Supp. 734, 737 (E.D. Mich. 1992), aff'd, 4 F.3d 993 (6th Cir. 1993) ("The fact that Ayer provided plaintiff with any insulin shows a lack of indifference.").

Indeed, the medical care provided was more thorough than in comparable cases. See Natale v. Camden Cty. Corr. Facility, 318 F.3d 575 (3d Cir. 2003) (reversing grant of summary judgment when prison staff never asked a prisoner plaintiff or otherwise determined how often he needed insulin); Hunt v. Uphoff, 199 F.3d 1220 (10th Cir.1999) (finding that an Eighth Amendment claim was sufficiently stated when a prisoner plaintiff was denied insulin for over a year); Scinto v. Stansberry, 841 F.3d 219, 235 (4th Cir. 2016), cert. denied sub nom. Phillip v. Scinto, 138 S. Ct. 447 (2017) (reversing grant of summary judgment when prison doctor "denied Plaintiff his prescribed insulin"); Briggs v. Burke, 2014 WL 204038 (W.D. Mich. Jan. 17, 2014) (finding that an Eighth Amendment claim was sufficiently stated when a prisoner plaintiff was denied insulin for four months).

Al-Saeedi said that when an inmate experiences DKA at such a low glucose level, a more chronically unstable version of diabetes is present. (Al-Saeedi Dep. 44). While a higher standard of care may be warranted for such diabetics, Rouse v. Plantier, 182 F.3d 192, 199 (3d Cir. 1999), nothing in the record shows that Al-Saeedi or Dozier knew that Wykoff suffered from this type of diabetes. The fact that no medical staff

member asked enough questions to ascertain it amounts to negligence at worst, and is not actionable under the Eighth Amendment. See Rouster v. Cty. of Saginaw, 749 F.3d 437, 448 (6th Cir. 2014) ("Rouster has not shown that Conley was in fact aware that Jerry had a serious medical need.").

### D. Count IV – Willful and Wanton Misconduct, Deliberate Indifference/Gross Negligence

Since Wykoff's federal claims fail, the Court declines to exercise supplemental jurisdiction over his state law claims. See 28 U.S.C. § 1367(c); Hucul Advert., LLC v. Charter Twp. of Gaines, 748 F.3d 273, 281 (6th Cir. 2014).

## V. CONCLUSION

Because there is no genuine issue as to the fact that Wykoff's constitutional rights were not violated, Al-Saeedi and Dozier are entitled to summary judgment. For the same reason and because Wykoff did not implicate a Wayne County policy, Wayne County is also entitled to summary judgment.

SO ORDERED.

                                                s/Avern Cohn
                                                AVERN COHN
                                                UNITED STATES DISTRICT JUDGE

Dated: June 12, 2018
Detroit, Michigan